Hearing Date & Time: _____
Objection Deadline: _____

David B. Shemano, Esq.
**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel:  (212) 980-7400
Fax: (212) 980-7499

- and -

Howard J. Weg, Esq. (*pro hac vice* pending)
Scott F. Gautier, Esq. (*pro hac vice* pending)
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax: (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>33 PECK SLIP ACQUISITION LLC,<br><br>                    Debtor, | Chapter 11<br><br>Case No. 15-12479 |
|---|---|

**MOTION BY DEBTOR FOR INTERIM AND FINAL ORDERS
UNDER 11 U.S.C. §§ 105, 361 AND 363
(A) AUTHORIZING USE OF CASH COLLATERAL, (B) AUTHORIZING
ADEQUATE PROTECTION, INCLUDING MONTHLY PAYMENTS TO
<u>LENDER, AND (C) GRANTING OTHER RELIEF</u>**

      33 Peck Slip Acquisition LLC, as debtor and debtor in possession (the "Debtor"),

hereby moves on an emergency basis for entry of an Interim Order in the form attached

hereto as Exhibit A (1) authorizing the Debtor to use the cash collateral of 33 Peck Slip

75622406.2

Hotel Capital LLC (the "Lender"), and (2) authorizing adequate protection, including monthly payments to the Lender, and (3) setting a final hearing on the motion (the "Motion"). In support of the Motion, the Debtor separately filed the Declaration of Christopher La Mack pursuant to Local Bankruptcy Rule 1007-2 (the "First Day Declaration").

I.

### JURISDICTION

1. The Bankruptcy Court has jurisdiction over this matter to pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate (the "Estate") and is, accordingly, a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue of this case is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 363, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules") and Rule 4001-2 of the Local Rules (the "Local Rules") of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

II.

### RELIEF REQUESTED

2. By this Motion, the Debtor seeks, among other things, an Order in the form of Exhibit A that:

    a. Authorizes the Debtor to use any cash collateral of the Lender as of the Petition Date in accordance with the budget that is attached hereto as Exhibit

B (the "Budget") on an interim basis pending the final hearing on the Motion and until the earlier of when a confirmed chapter 11 plan for the Debtor becomes effective and six months after the final hearing on the Motion.

      b.      Authorizes the Debtor to provide the Lender adequate protection in the form of (i) continued monthly payments of fixed interest in accordance with the Lender's prepetition loan documents, (ii) continued use, maintenance and insurance of the Lender's prepetition collateral in accordance with the Lender's prepetition loan documents, (iii) to the extent of the use of any of the Lender's cash collateral, granting the Lender replacement security interests and liens on any postpetition property of the Estate that have the same scope, priority, validity and enforceability as the Lender's prepetition security interests and liens had with respect to the cash collateral that is used by the Debtor but without requiring any additional filing or recordation of statements or documents, (iv) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code to the extent of any diminution of the Lender's cash collateral from the Petition Date, and (v) providing to the Lender copies of all pleadings, papers and reports filed with the Bankruptcy Court or submitted to the United States Trustee and any other non-privileged information reasonably requested by the Lender.

      c.      Setting a final hearing on the Motion in accordance with Rule 4001 as soon as reasonably convenient for the Bankruptcy Court.

III.

## GENERAL BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Additional factual background relating to the Debtor's businesses and the commencement of the chapter 11 case is set forth in detail in the *Declaration of Christopher La Mack Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York In Support of Debtors' Emergency and Other 'First-Day' Motions* (the "First Day Declaration"), filed contemporaneously herewith and fully incorporated herein by reference.

5. The Debtor is a Delaware limited liability company that owns and operates a hotel (the "Hotel") at 33 Peck Slip in the South Street Seaport Historic District on the Lower Manhattan waterfront in New York City, New York. The sole member and manager of the Debtor is 33 Peck Slip Holding LLC, a Delaware limited liability company, the manager for which is 33 Peck Slip Manager LLC, a Delaware limited liability company, the sole member and manager of which is Gemini Equity Partners, LLC, a Delaware limited liability company, whose members are Dante A. Massaro, Christopher La Mack and William T. Obeid.

6. The Hotel's large guest rooms and 6,000 square foot footprint, its pristine historic structure, and its excellent location in the heart of the South Street Seaport Historic District provide a significant redevelopment opportunity to turn the Hotel into

one of Lower Manhattan's premier boutique hotels. While the Hotel is currently branded as a Best Western unit, the Hotel was marketed as unencumbered of both brand and management with significant redevelopment potential.

7. The Hotel currently features 72 oversized guestrooms, including two executive floors and 10 suites with large terraces and stunning views of the Brooklyn Bridge and the Financial District. The ground floor, which includes nearly 3,000 square feet of usable space and extensive street frontage on both Peck Slip and Front Street, has the potential to be redeveloped into a unique lobby and bar/restaurant concept.

8. During 2012, 2013, 2014 and to June 30, 2015, the financial results of the Hotel were as follows:

|  | 2012 | 2013 | 2014 | 2015 (to June 30) |
|---|---|---|---|---|
| Avg. Occupancy | 78.2% | 75.0% | %85.0 | 81.7% |
| Gross Revenue | $3,795,000 | $4,168,000 | $3,824,673.00 | $1,750,662.00 |
| Allocated Dep't Expenses | $1,006,000 | $1,057,000 | 4961,009.00 | $608,605.00 |
| Unallocated Expenses | $843,000 | $807,000 | $637,378.00 | $396,523.88 |
| Management Fees | $114,000 | $125,000 | $152,987.00 | $69,988.07 |
| Insurance and Taxes | $605,000 | $483,000 | $411,878.00 | $276,473.10 |
| FF&E Reserve | $152,000 | $167,000 | - | - |
| Net Operating Income | $1,075,000 | $1,529,000 | $1,661,421.00 | $399,071.95 |

IV.

**FACTS SPECIFIC TO THIS MOTION**

9. Prior to the commencement of the Debtor's Chapter 11 Case, the Debtor hired RobertDouglas (the "Broker") to advertise and market the Hotel for sale.

10. The Debtor prepared the Budget consistent with its operating history, current market conditions and its projected future performance during the period covered by the Budget. The Debtor reasonably believes that the Budget is adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget.

11. As of the Petition Date, the Lender claims that it was owed approximately $30,682,075.00, the Debtor's priority creditors were owed approximately $291,195.02 and the Debtor's general unsecured creditors were owed approximately $39,664.11. There are no other secured creditors that assert a lien against the Hotel.

12. Concurrently with the filing of the Debtor's Chapter 11 Case and the filing of the Motion, the Debtor filed a proposed chapter 11 plan of reorganization (the "Plan") and will file a related motion for an order authorizing the Debtor to sell the Hotel free and clear of liens, claims, encumbrances and interests (the "Sale Motion"). Pursuant to the Sale Motion and Plan, the Debtor intends to sell the Hotel for $37.3 million, to pay the Lender and all other creditors in full and to make distributions to the Debtor's equity interest holders. The proposed sale to the stalking horse bidder for $37.3 million is subject to overbids.

13. Prior to the commencement of the Debtor's Chapter 11 Case, the Debtor informed the Lender about the contemplated chapter 11 filing and the Debtor's

intention to seek to sell the Hotel pursuant to section 363 of the Bankruptcy Code in connection with a chapter 11 plan. The Debtor also advised the Lender that the Debtor would seek to use the Lender's cash collateral until the sale could be consummated and the Plan would become effective.

14. As of the Petition Date, the Lender claims that the Debtor was indebted to the Lender in the amount of approximately $30,682,075.00, comprised of principal in the amount of $30,523,101.00, interest in the amount of approximately $158,974.00 and any additional amounts, including without limitation costs, fees, and additional interest, if allowed, that the Lender may assert, pursuant to the following documents between the Debtor and the Lender (the "Loan Documents"):

    a. The Master Loan Agreement between the Debtor and the Lender dated as of March 14, 2014;

    b. The Consolidated, Amended and Restated Acquisition Loan Promissory Note in the amount of $28,264,318.28 dated March 14, 2014, the Consolidated, Amended and Restated Acquisition Loan Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated March 14, 2014 as recorded in the Office of the City Register of the City of New York (the "Register's Office") on May 15, 2014 as CRFN2014000167244, the Acquisition Loan Assignment of Rents dated March 14, 2014 as recorded with the Register's Office on May 15, 2014 as CRFN2014000167245;

    c. The Building Loan Agreement dated as of March 14, 2014, the Building Loan Promissory Note in the amount of $3,650,000 dated March 14, 2014, the Building Loan Mortgage, Assignment of Rents, Security Agreement and

Fixture Filing dated as of March 14, 2014 as recorded in the Register's Office on May 15, 2014 as CRFN2014000167246, and the Building Loan Assignment of Rents and Leases dated as of March 14, 2014 as recorded in the Register's Office on May 15, 2014 as CRFN2014000167247;

  d. The Project Loan Agreement dated as of March 14, 2014, the Project Loan Promissory Note in the amount of $4,585,681.72 dated March 14, 2014, the Project Loan Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 14, 2014 as recorded in the Register's Office on May 15, 2014 as CRFN2014000167248, and the Project Loan Assignment of Rents and Leases dated as of March 14, 2014 as recorded in the Register's Office on May 15, 2014 as CRFN2014000167249;

  e. The Gap Promissory Note in the amount of $23,077,305.20 dated March 14, 2014 and the Gap Mortgage dated as of March 14, 2014 and recorded with the Register's office on May 15, 2014 as RFN2014000167243; and

  f. The Full Recourse Guaranty dated as of March 14, 2014 by Gemini Real Estate Advisors, LLC ("Gemini"), the Completion Guaranty dated as of March 14, 2014 by Gemini, the Guaranty (Recourse Carve-outs) dated as of March 14, 2014 by Gemini, and the Indemnity Agreement dated as of March 14, 2014 by the Debtor and Gemini.

V.

**THE DEBTOR'S NEED TO USE CASH COLLATERAL**

15. As the owner of a guest-filled hotel whose operation is dependent on cash flow, the Debtor must continue to operate the Hotel to maintain and preserve the

Debtor's value and the Lender's Collateral. The Debtor urgently requires the use of the Lender's cash collateral to operate, maintain and preserve the Hotel pending its sale and the effectiveness of the Plan.  The Debtor has prepared the six-month Budget that anticipates the Debtor's cash needs during that time.  As set forth in the Budget, the Debtor requires cash for the primary purposes of paying: (1) employees and related benefits, (2) supplies, (3) utilities, (4) taxes, (5) commissions and sales expenses and (6) to the extent allowed by the Bankruptcy Court, professional fees. As reflected in the Budget, the Debtor projects that its cash balance will be approximately $998,662 for the week ending September 7, 2015 and approximately $933,977 by the time the Hotel is sold on or before December 21, 2015.

16.    Because projections are forward-looking, they can never be entirely accurate.  Thus, to protect the Debtor from timing differences and fluctuations in revenues, expenses and costs, the Debtor requests that it be permitted to have the flexibility to increase expenditures by up to 20% for any particular line item in the Budget, and 15% in the aggregate.  Under this structure, the Debtor will have the flexibility to operate the Hotel responsibly and without interruption.

17.    The Budget may be amended or modified during the interim period until a final hearing on the Motion can be held.  The Debtor will attempt, prior to a final hearing on the Motion, to negotiate a consensual cash collateral agreement with the Lender.  If and when a consensual agreement is reached with the Lender, the Debtor will file a supplement to the Motion describing the terms of the consensual agreement and requesting that the Bankruptcy Court approve the consensual agreement at the final hearing pursuant to Rule 4001.  If for any reason a consensual agreement with the

Lender is not reached before the final hearing, the Debtor will, if necessary, file a revised cash collateral Budget and request that the Bankruptcy Court approve the revised Budget at the final hearing.

## VI.

## THE LENDER IS ADEQUATELY PROTECTED

18.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral without either the consent of the secured party or an order of the court.  Section 363(e) provides that a court may condition the debtor's use of cash collateral on the debtor providing "adequate protection" of the secured party's interest in the collateral being used.  The protection for the secured creditor is against diminution in the value of the cash collateral used by the debtor.  The type of adequate protection that is appropriate in a particular case will depend on the nature of the case.  Indeed, "[a]dequate protection [is] a concept which is to be decided flexibly on the proverbial case-by-case basis." *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987).  *See* section 361 of the Bankruptcy Code.

    A.     **The Lender Is Adequately Protected By Continued Monthly Payments.**

19.     The Budget provides for the Lender to continue to receive the monthly payments of fixed interest required under the Lender's Loan Documents.  Periodic cash payments are a classic and well-accepted form of adequate protection. *See* 11 U.S.C. § 361(1).

    B.     **The Lender Is Adequately Protected Because It Is Receiving Replacement Liens.**

20.     As reflected in the Budget, the Debtor is profitable and the continued operation of the Hotel will not decrease the Debtor's cash by the time the Hotel is

expected to be sold. It is black-letter law that a secured creditor is adequately protected where, as here, the Debtor is projected to operate profitably and the cash collateral is used to maintain and preserve the creditor's collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713 (Bankr. D. Del. 1996); *see also, In re Constable Plaza Associates, L.P.*, 125 B.R. 98 (Bankr. S.D.N.Y. 1991) (secured creditor adequately protected where cash collateral used to preserve value of assets.

21.  For the Debtor to continue to maintain and preserve the value of its assets, it will need to use the cash collateral, in part, to operate and enhance the Lenders' Collateral. The most appropriate form of adequate protection the Debtor can provide to the Lender is to grant the Lender replacement liens, to the extent of cash collateral used, on all postpetition property of the same type and character as the property to which the Lender's valid, perfected and unavoidable prepetition liens, if any, extended. The grant of replacement liens more than adequately protects the Lender's security interests in the Lender's cash collateral. This is another classic and well-accepted form of adequate protection. See section 361(2) of the Bankruptcy Code.

C.  **The Lender Is Adequately Protected By An Equity Cushion.**

22.  As demonstrated by the Sale Motion and the Plan, the value of the Hotel is at least equal to the purchase price proposed to be paid by the stalking horse purchase of $37.3 million, while the amount of Lender's secured claims is approximately $30,682,075.84 million, leaving an equity cushion of about 18% with no liens junior to the Lender's liens. It is well-established that the existence of an equity cushion alone can constitute adequate protection to a secured creditor when a debtor seeks to use cash collateral. *See, e.g., In re Mellor*, 734 F.2d 1396 (9th Cir. 1984). In *Mellor*, the Ninth

Circuit held that a 20% equity cushion constituted adequate protection as a matter of law. *Id.* at 1404. In some cases, a cushion of less than 20% has been held to constitute adequate protection. *See, In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (holding that a 10% cushion is adequate protection); *In re Rogers Development Corp.*, 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (equity cushion of approximately 15% to 20% was adequate protection notwithstanding that the debtors had no equity in the property). *See also, In re Boulders on the River, Inc.*, 164 B.R. 99 (9th Cir. BAP 1994) (creditor was adequately protected with an equity cushion of 11.45%); *In re Hawaiian Pacific Industries*, 17 B.R. 670, 673 (Bankr. D. Hawaii 1982) (15% cushion constituted adequate protection)).

   D. **Additional Adequate Protection.**

   23. In addition to the Debtor's continued monthly payments to the Lender, no decrease in cash levels overall, the grant of replacement liens and the equity cushion described above, the Debtor will provide the Lender with additional adequate protection, as follows: (a) continued use, maintenance and insurance of the Lender's Collateral in accordance with the Lender's Loan Documents, (b) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code to the extent of any diminution of the Lender's cash collateral from the Petition Date, and (c) providing to the Lender copies of all publicly available pleadings, papers and reports filed with the Bankruptcy Court or submitted to the United States Trustee and any other non-privileged information reasonably requested by the Lender.

VII.

## THE COURT SHOULD AUTHORIZE THE INTERIM USE
## OF CASH COLLATERAL PENDING A FINAL HEARING

24. Pursuant to FRBP 4001(b)(2), the Bankruptcy Court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion, and may authorize the interim use of cash collateral only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. *See generally, In re Center Wholesale, Inc.*, 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (discussion of importance of emergency relief granting use of cash collateral at the commencement of a case).

25. The Debtor will suffer immediate and irreparable harm unless it is permitted to pay its essential postpetition expenses prior to a final hearing on the Motion. Most significantly, the Debtor must pay for : (1) employees and related benefits, (2) supplies, (3) utilities, (4) taxes, (5) commissions and sales expenses, and (6) to the extent allowed by the Bankruptcy Court, professional fees. If the Debtor is not permitted to pay these critical expenses, the Estate will be severely damaged. According to the Budget, the Debtor projects reasonable expenses during the first 30 days of this Chapter 11 Case, with a permitted variance of up to 20% for any particular line item and 15% in the aggregate due to timing, differences and fluctuation in prices and rates. This is the amount of cash collateral the Debtor seeks authority to use pending the final hearing on the Motion within that time.

26. The Debtor, its Estate and creditors will suffer immediate and irreparable harm if the Debtor is not authorized to use cash collateral on an interim basis prior to

the final hearing on the Motion. If the operation of the Hotel is interrupted due to any lack of cash to pay employees and other operating expenses, the Hotel may be forced to close its doors. Shutting down the Hotel, even for a brief time, will immediately cause cancellations of reservations and force guest traffic to other available properties.

27. Under the circumstances, the Debtor requests that the Bankruptcy Court set a final hearing as soon as the Bankruptcy Court's calendar permits and authorize the Debtor to use cash collateral in accordance with the Budget, and the requested permitted variance, on an interim basis pending the final hearing.

## VIII.

## NOTICE

28. No trustee, examiner or creditors' committee has been appointed in the Chapter 11 Case.

29. The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of New York, (b) the Debtor's secured creditors, and (c) the holders of the twenty (20) largest unsecured claims.

30. No previous request for the relief sought herein has been made to this or any other court.

## IX.

## CONCLUSION

**WHEREFORE**, the Debtor requests that the Bankruptcy Court enter an Order, substantially in the form attached as Exhibit A to this Motion:

    A.    Authorizing the Debtor to use any cash collateral of the Lender as of the Petition Date in accordance with the Budget on an interim basis pending

the final hearing on the Motion and, if the Motion is granted on a final basis, for approximately six months after the final hearing on the Motion.

B. Authorizing the Debtor to provide the Lender with adequate protection in the form of (i) continued monthly payments of fixed interest at the non-default rate in accordance with the Lender's Loan Documents, (ii) continued use, maintenance and insurance of the Lender's prepetition collateral in accordance with the Lender's Loan Documents, (iii) to the extent of the use of any of the Lender's cash collateral, granting the Lender replacement security interests and liens on any postpetition property of the Estate that has the same scope, priority, validity and enforceability as the Lender's prepetition security interests and liens had with respect to the cash collateral that is used by the Debtor but without requiring any additional filing or recordation of statements or documents, (iv) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code to the extent of any diminution of the Lender's cash collateral from the Petition Date, and (v) providing to the Lender copies of all pleadings, papers and reports filed with the Bankruptcy Court or submitted to the United States Trustee and any other non-privileged information reasonably requested by the Lender.

C. Setting a final hearing on the Motion in accordance with Rule 4001 as soon as reasonably convenient for the Bankruptcy Court.

D. Granting such other and further relief as may be appropriate under the circumstances.

Dated:  New York, New York
        September 3, 2015

        Respectfully Submitted,

        **ROBINS KAPLAN LLP**

        By: /s/ David B. Shemano
        David B. Shemano, Esq.
        601 Lexington Avenue
        Suite 3400
        New York, NY 10022-4611
        Tel: (212) 980-7400
        Fax: (212) 980-7499

        -and-

        Howard J. Weg, Esq. (*pro hac vice* pending)
        Scott F. Gautier, Esq. (*pro hac vice* pending)
        2049 Century Park East
        Suite 3400
        Los Angeles, CA 90067-3208
        Tel: (310) 522-0130
        Fax: (310) 229-5800

        *Proposed Counsel for Debtor and Debtor in Possession*