David B. Shemano, Esq.
**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel:  (212) 980-7400
Fax: (212) 980-7499

- and -

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 522-0130
Fax: (310) 229-5800

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 33 PECK SLIP ACQUISITION LLC, *et al.*[1] | Case No. 15-12479 |
| Debtor, | (Jointly Administered) |

## DEBTORS' FIRST AMENDED JOINT
## LIQUIDATING PLAN  DATED DECEMBER 2, 2015

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 33 Peck Slip Acquisition LLC (3412), 52 West 13th P, LLC (4970), 36 West 38th Street, LLC (6842), and Gemini 37 West 24th Street MT, LLC (4143).

## INDEX

Page

INTRODUCTION ......................................................................................................... 1

ARTICLE 1   DEFINED TERMS AND RULES OF INTERPRETATION ........................... 1

ARTICLE 2   TREATMENT OF UNCLASSIFIED CLAIMS ............................................. 10

ARTICLE 3   CLASSIFICATION AND TREATMENT OF CLAIMS
AND INTERESTS ....................................................................................... 12

ARTICLE 4   ACCEPTANCE OF THIS PLAN ................................................................. 28

ARTICLE 5   MEANS FOR IMPLEMENTATION OF THIS PLAN .................................. 28

ARTICLE 6   PROVISIONS GOVERNING DISTRIBUTIONS ........................................ 31

ARTICLE 7   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..................................................................................................... 34

ARTICLE 8   CONFIRMATION AND CONSUMMATION OF THIS PLAN ................. 36

ARTICLE 9   EFFECT OF PLAN CONFIRMATION ....................................................... 37

ARTICLE 10  RETENTION OF JURISDICTION .................................................................. 39

ARTICLE 11  MISCELLANEOUS PROVISIONS ................................................................ 41

## INTRODUCTION

The above-captioned debtors (the "Debtors") propose the following joint plan of liquidation for the resolution of the outstanding Claims against and Interests in the Debtors. Subject to certain restrictions and requirements set forth in section 1127 of title 11 of the United States Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, subject to Article 11.6 herein, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan.

## ARTICLE 1

## DEFINED TERMS AND RULES OF INTERPRETATION

***Defined Terms***. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in

51

the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.1** ***33 Peck*** means 33 Peck Slip Acquisition LLC.

**1.2** ***33 Peck Asset*** means the real property, improvements, and related rights, privileges and appurtenances owned by 33 Peck located at 33 Peck Slip, New York, New York.

**1.3** ***33 Peck Sale Agreement*** means (a) the Purchase and Sale Agreement between 33 Peck and Morning View Hotels – New York Seaport, LLC attached as Exhibit A to the 33 Peck Sale Motion, or (b) a sale agreement entered into by 33 Peck with a bidder that submits a higher and better bid for the 33 Peck Asset.

**1.4** ***33 Peck Sale Motion*** means the motion filed with the Bankruptcy Court on September 8, 2015, by 33 Peck to approve the 33 Peck Sale Agreement, which was entered on the Bankruptcy Court's docket in the 33 Peck case as document no. 19.

**1.5** ***36 West*** means 36 West 38th Street LLC.

**1.6** ***36 West Asset*** means the real property, improvements, and related rights, privileges and appurtenances owned by 36 West located at 34-36 West 38th Street, New York, New York.

**1.7** ***36 West Sale Agreement*** means a sale agreement between 36 West and a buyer for the 36 West Asset that is filed with the Bankruptcy Court prior to the Effective Date, or (b) a sale agreement entered into by 36 West with a bidder that submits a higher and better bid for the 36 West Asset.

1

**1.8**    *36 West Sale Motion* means a motion filed with the Bankruptcy Court by 36 West to approve a 36 West Sale Agreement.

**1.9**    *37 West* means Gemini 37 West 24th Street Mt, LLC.

**1.10**    *37 West Asset* means the real property, improvements, and related rights, privileges and appurtenances owned by 37 West located at 37-39 West 24th Street, New York, New York.

**1.11**    *37 West Sale Agreement* means (a) the Purchase and Sale Agreement between 37 West and Bridgeton Acquisitions LLC attached as Exhibit A to the 37 West Sale Motion, or (b) a sale agreement entered into by 37 West with a bidder that submits a higher and better bid for the 37 West Asset.

**1.12**    *37 West Sale Motion* means the motion filed with the Bankruptcy Court on September 8, 2015, by 37 West to approve the 37 West Sale Agreement, which was entered on the Bankruptcy Court's docket in the 37 West case as document no. 20.

**1.13**    *52 West* means 52 West 13th P, LLC.

**1.14**    *52 West Asset* means the real property, improvements, and related rights, privileges and appurtenances owned by 52 West located at 52 West 13th Street, New York, New York.

**1.15**    *52 West Sale Agreement* means (a) the Purchase and Sale Agreement between 52 West and Bridgeton Acquisitions LLC attached as Exhibit A to the 52 West Sale Motion, or (b) a sale agreement entered into by 52 West with a bidder that submits a higher and better bid for the 52 West Asset .

**1.16**    *52 West Sale Motion* means the motion filed with the Bankruptcy Court on September 8, 2015, by 52 West to approve the 52 West Sale Agreement, which was entered on the Bankruptcy Court's docket in the 52 West case as document no. 20.

**1.17**    *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases under sections 503(b) or 507(b) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estates and operating the businesses of the Debtors; (b) Professional Fee Claims; and (c) claims under section 503(b)(9) of the Bankruptcy Code.

**1.18**    *Allowed* means, with respect to any Claim, such Claim or any portion thereof that the Debtors have assented to the validity of or that has been (a) allowed by a Final Order of the Bankruptcy Court, (b) allowed pursuant to the terms of this Plan, (c) allowed by agreement between the Holder of such Claim and the Debtors or Reorganized Debtors, or (d) with respect to any Unimpaired Claim, determined, resolved or adjudicated in any venue in which such Claim could have been determined,

resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided, however*, that, notwithstanding anything herein to the contrary, by treating an Unimpaired Claim as an "Allowed Claim" the Debtors do not waive their rights to contest the amount and validity of such Unimpaired Claim to the extent it is disputed, contingent or unliquidated, in the manner and venue in which such Unimpaired Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

1.19    *Allowed Amount* means the Allowed amount of an Allowed Claim plus interest from the Petition Date though the date that the Allowed Claim is satisfied pursuant to the Plan at the greatest of (a) the legally enforceable rate of interest set forth in a contract between the Holder of the Allowed Claim and the applicable Debtor, (b) the legally enforceable statutory rate of interest set forth in non-bankruptcy law applicable to such Allowed Claim, and (c) the rate set forth in 28 U.S.C. § 1961 as of the Petition Date.

1.20    *Avoidance Action* means a claim or cause of action of an Estate arising out of or maintainable pursuant to sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b) or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.21    *Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Cases.

1.22    *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of New York, or any other court with jurisdiction over the Chapter 11 Cases.

1.23    *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendments apply to the Chapter 11 Cases.

1.24    *Business Day* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.25    *Cash* means legal tender of the United States of America.

1.26    *Chapter 11 Case(s)* means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

1.27    *City of New York* means the City of New York and its agencies, including the New York City Department of Finance.

**1.28**   *City of New York Secured Claim* means a Claim asserted by the City of New York against a Debtor (a) for any unpaid real estate taxes, water and sewer charges or other charges treated by statute as real estate taxes that is secured by the real property assets of the Debtor under applicable law, or (b) that is based upon a recorded judgment secured by the real property assets of a Debtor under applicable law.

**1.29**   *Claim* means a "claim" as defined in section 101(5) of the Bankruptcy Code.

**1.30**   *Class* means a category of Claims or Interests, as described in Article 3 hereof.

**1.31**   *Confirmation* means the confirmation of this Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

**1.32**   *Confirmation Date* means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.33**   *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.34**   *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.35**   *Cornerstone 37 West* means SBNP SIA Mortgage I LLC.

**1.36**   *Cornerstone 37 West Allowed Secured Claim* means the Secured Claim asserted by Cornerstone 37 West against 37 West in the Allowed Amount set forth in the *Final Order For Gemini 37 West 24th Street Mt, LLC (A) Authorizing Use Of Cash Collateral, (B) Authorizing Adequate Protection, Including Monthly Payments To Lender, And (C) Granting Other Relief*, entered by the Bankruptcy Court on November 9, 2015, and secured by substantially all of the assets of 37 West.

**1.37**   *Cornerstone 52 West* means CEMF I USB LLC.

**1.38**   *Cornerstone 52 West Allowed Secured Claim* means the Secured Claim asserted by Cornerstone 52 West against 52 West in the Allowed Amount set forth in the *Final Order For 52 West 13th P, LLC (A) Authorizing Use Of Cash Collateral, (B) Authorizing Adequate Protection, Including Monthly Payments To Lender, And (C) Granting Other Relief*, entered by the Bankruptcy Court on November 9, 2015, and secured by substantially all of the assets of 52 West.

**1.39**   *Creditors' Committee* means a statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

4

**1.40**     *Debtors* means the following debtors and debtors in possession in the Chapter 11 Cases: 33 Peck Slip Acquisition LLC; 36 West 38th Street LLC; Gemini 37 West 24th Street Mt, LLC; and 52 West 13th P, LLC.

**1.41**     *Derivative Claims* means the derivative claims asserted by William T. Obeid derivatively on behalf of, *inter alia*, 33 Peck, 36 West, 52 West and 37 West against Christopher La Mack, Dante Massaro, Bridgeton Holdings, LLC, Bridgeton Acquisitions, LLC, Bridgeton Hotel Management, LLC, Atit Jariwala and Elevation Real Estate Group, LLC in actions now pending in the United States District Court for the Southern District of New York before Judge Laura Taylor Swain styled *William T. Obeid v. Christopher La Mack et al.*, Case No. 14-CV-6498 (LTS) (the "*Federal Action*") and the Supreme Court of the State of New York, County of New York, Commercial Division before Justice Saliann Scarpulla, styled *William T. Obeid, et al. v. Bridgeton Holdings, LLC, et al.*, Index No. 152596/2015 (N.Y. Sup. Ct. Commercial Division) (the "*State Court Action*," and together with the Federal Action, the "*Pending Actions*").

**1.42**     *Disputed Claim* means (a) a Claim as to which the Debtors have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtors, the Reorganized Debtors, or other party-in-interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order, (b) a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, (c) a Claim which amends a Claim scheduled by the Debtors as contingent, unliquidated, or disputed, or (d) a Claim prior to it having become an Allowed Claim.

**1.43**     *Effective Date* means a Business Day on or after the Confirmation Date specified by a Debtor on which (a) no stay of the Confirmation Order is in effect and (b) the conditions to effectiveness set forth in Article 8.2 hereof have been satisfied or waived with respect to such Debtor.

**1.44**     *Estate(s)* means, individually, the estate of any of the Debtors and, collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

**1.45**     *Exculpated Parties* means (a) the Debtors, (b) any affiliate of the Debtors, (c), the Restructuring Professionals, and (d) the present directors, officers, managers, employees or legal advisors of (a) through (c) (in their capacity as such).

**1.46**     *Executory Contract* means an executory contract within the meaning of section 365 of the Bankruptcy Code to which any of the Debtors is a party.

**1.47**     *Exhibit* means an exhibit annexed to or specifically referenced in this Plan as amended, modified or supplemented from time to time.

**1.48**   *Final Order* means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request reargument or further review or rehearing has expired and no appeal, petition for certiorari, or request for reargument or further review or rehearing has been timely filed, or (b) any appeal, that has been or may be taken or any petition for certiorari or request for reargument or further review or rehearing that has been or may be filed, has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal or petition for certiorari or request for reargument or further review or rehearing has been or can be taken or granted.

**1.49**   *General Unsecured Claim* means a Claim against a Debtor that is not an Administrative Claim, Secured Claim, Insured Claim, Non-Tax Priority Claim, or Priority Tax Claim.

**1.50**   *Holder* means a holder of a Claim or Interest, as applicable, or such holder's designee.

**1.51**   *Impaired* means, when used in reference to a Claim, a Claim that is in a class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.52**   *Insured Claim* means a Claim against a Debtor that is covered by insurance or an indemnity policy, agreement, bond or right maintained by or for the benefit of such Debtor, but only to the extent of coverage or liability under the insurance or indemnity policy, agreement, bond or right.

**1.53**   *Intercompany Claim* means (a) any account reflecting intercompany book entries by one Debtor with respect to any other Debtor or any non-Debtor affiliate or (b) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor or any non-Debtor affiliate.

**1.54**   *Interest* means the legal, equitable, contractual (including any contractual right to acquire equity in a Debtor contingent upon future events, such as an initial public offering) and other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and any option, warrant, or right to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor, including membership interests in limited liability companies regardless of whether such membership interests have any voting rights under the applicable operating agreement.

**1.55**   *Lien* means a lien, security interest, pledge, title retention agreement, encumbrance, lis pendens, charge, mortgage or hypothecation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

6

     **1.56**    ***Non-Tax Priority Claim*** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

     **1.57**    ***Other Secured Claim*** means a Secured Claim that is not a City of New York Secured Claim, Cornerstone 37 West Allowed Secured Claim, Cornerstone 52 West Allowed Secured Claim, UBS 33 Peck Allowed Secured Claim, or UBS 36 West Allowed Secured Claim.

     **1.58**    ***Person*** means a "person" as defined in section 101(41) of the Bankruptcy Code.

     **1.59**    ***Petition Date*** means, with respect to a Debtor,, the date on which such Debtor filed its petition for relief commencing its Chapter 11 Case.

     **1.60**    ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be amended, modified or supplemented from time to time.

     **1.61**    ***Priority Tax Claim*** means a Claim of a governmental unit of the kind specified in sections 502(i), 507(a)(8), or 1129(a)(9)(D) of the Bankruptcy Code, including any Claim of the City of New York based on a hotel room occupancy tax or other excise tax.

     **1.62**    ***Professional*** means (a) a professional employed in the Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code or otherwise, and (b) a professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

     **1.63**    ***Professional Fee Claim*** means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

     **1.64**    ***Real Estate Assets*** means collectively (a) the 33 Peck Asset, (b) the 36 West Asset, (c) the 37 West Asset, and (d) the 52 West Asset.

     **1.65**    ***Real Estate Sale Agreements*** means collectively (a) the 33 Peck Sale Agreement, (b) the 36 West Sale Agreement, (c) the 37 West Sale Agreement, and (d) the 52 West Sale Agreement.

     **1.66**    ***Real Estate Sale Motions*** means collectively (a) the 33 Peck Sale Motion, (b) the 36 West Sale Motion, (c) the 37 West Sale Motion, and (d) the 52 West Sale Motion.

**1.67**    *Reinstated* means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave the class including such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of a Claim for any damages incurred as a result of any reasonable reliance by such holder of a Claim on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence, prohibiting certain transactions, change of control or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured to achieve reinstatement.

**1.68**    *Reorganized* means, with respect to a Debtor, the successor to such Debtor on and after the Effective Date.

**1.69**    *Restructuring Professionals* means Robins Kaplan LLP, bankruptcy counsel to the Debtors.

**1.70**    *Retained Actions* means all claims, causes of action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor, any Debtor's Estate, or any Reorganized Debtor may hold against any Person, including: (a) claims and causes of action brought prior to the Effective Date, (b) claims and causes of action against any Person for failure to pay for products or services provided or rendered by any of the Debtors or Reorganized Debtors, (c) claims and causes of action relating to enforcement of any of the Debtors' or Reorganized Debtors' intellectual property rights, including patents, copyrights and trademarks, (d) claims and causes of action seeking the recovery of any of the Debtors' or the Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' or the Reorganized Debtors' businesses, including claim overpayments and tax refunds, and (e) all Avoidance Actions.

**1.71**    *Secured Claim* means a Claim that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

8

**1.72**    *UBS* means UBS Realty Investors LLC.

**1.73**    *UBS 33 Peck Allowed Secured Claim* means the Secured Claim asserted by UBS 33 Peck against 33 Peck in the Allowed Amount set forth in the *Final Order For 33 Peck Slip Acquisition LLC (A) Authorizing Use Of Cash Collateral, (B) Authorizing Adequate Protection, Including Monthly Payments To Lender, And (C) Granting Other Relief*, entered by the Bankruptcy Court on November 25, 2015, and secured by substantially all of the assets of 33 Peck.

**1.74**    *UBS 36 West* means 36 West 38th Street Hotel Capital LLC.

**1.75**    *UBS 36 West Allowed Secured Claim* means the Secured Claim asserted by UBS 36 West against 36 West in the Allowed Amount set forth in the *Final Order For 36 West 38th Street, LLC (A) Authorizing Use Of Cash Collateral, (B) Authorizing Adequate Protection, And (C) Granting Other Relief*, entered by the Bankruptcy Court on November 25, 2015, and secured by substantially all of the assets of 36 West.

**1.76**    *UBS 33 Peck* means 33 Peck Slip Hotel Capital, LLC, an affiliate of UBS.

**1.77**    *Unclassified Claims* means Administrative Claims and Priority Tax Claims.

**1.78**    *Unexpired Lease* means an unexpired lease within the meaning of section 365 of the Bankruptcy Code to which any of the Debtors is a party.

**1.79**    *Unimpaired* means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.80**    *U.S. Trustee Fees* means all fees and charges assessed against the Estates under Section 1930 of title 28 of the United States Code.

**1.81**    *Rules Of Interpretation And Computation Of Time.*  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions with any modifications subject to the consent of the Debtors; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for

9

convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

**1.82** *Exhibits.*  All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court no later than the Confirmation Date.  Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtors.  Upon their filing, the Exhibits may be inspected (i) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (ii) on the Bankruptcy Court's website at http://www.nysb.uscourts.gov (registration required).  The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**2.1** *Statutory Fees.*  On the Effective Date, all fees due and payable pursuant to 28 U.S.C. § 1930, including, without limitation, any U.S. Trustee Fees and any applicable interest thereon incurred pursuant to 28 U.S.C. § 1930(a)(6), as determined by the Bankruptcy Court at the Confirmation Hearing, to the extent not previously paid by the Debtors, shall be paid in Cash in full.  The Reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date.  Following Confirmation, the Reorganized Debtors will file with the Bankruptcy Court and serve on the United States Trustee quarterly financial reports regarding all income and disbursements, including all Plan payments, for each quarter (or portion thereof) that the Chapter 11 Cases remain open.

**2.2** *Administrative Claims.*  On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (c) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of such

Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim. Notwithstanding the foregoing, (y) any Allowed Administrative Claim based on a liability incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto and (z) any Allowed Administrative Claim may be paid on such other terms as may be agreed to between the Holder of such Claim and the Debtors or the Reorganized Debtors.

  **2.3** *Deadline for Filing Administrative Claims.* Other than Holders of (a) Administrative Claims for U.S. Trustee Fees and any applicable interest thereon, (b) Professional Fee Claims, (c) Administrative Claims that were Allowed on or before the Effective Date (including any Administrative Claims of Cornerstone 37 West, Cornerstone 52 West, UBS 33 Peck, and UBS 36 West governed by a final cash collateral order), (d) Administrative Claims incurred and payable in the ordinary course of the Debtors' business, (f) Administrative Claims asserted by a governmental unit, and (g) Administrative Claims held by current officers, directors, managers or employees for indemnification, contribution, or advancement of expenses pursuant to (1) an operating agreement or similar organizational document, or (2) agreement approved by the Bankruptcy Court, all Holders of Administrative Claims shall file with the Bankruptcy Court and serve on the Reorganized Debtors proof of any unpaid Administrative Claim on or before the 30th day following the Effective Date. Such proof must include all supporting documentation for such Administrative Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

  **2.4** *Priority Tax Claims.* On, or as soon as reasonably practicable after, the later of (a) the Effective Date or (b) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the sole discretion of the Debtors, Cash equal to the Allowed Amount of such Holder's Allowed Priority Tax Claim, or such other treatment as to which the Debtors or the Reorganized Debtors and such Holder shall have agreed upon in writing.

  **2.5** *Professional Fee Claims.* Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with a Chapter 11 Case prior to the Effective Date for a Debtor shall file with the Bankruptcy Court and serve on the Reorganized Debtors an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the 60th day following the Effective Date for that Debtor. **FAILURE TO FILE AND SERVE SUCH PROFESSIONAL FEE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE PROFESSIONAL FEE CLAIM BEING FOREVER BARRED**

**AND DISCHARGED.** Without limiting the foregoing, a Reorganized Debtor may pay the charges incurred by the Reorganized Debtor on and after the Effective Date for that Debtor for any Professional's fees, disbursements, expenses or related support services, without application to or approval by the Bankruptcy Court.

**ARTICLE 3**

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**3.1** *Summary of Classes.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such Unclassified Claims is set forth in Article 2 of this Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| Class | Claim or Interest | Impaired/Unimpaired | Entitlement To Vote |
|---|---|---|---|
| **1. 33 PECK SLIP ACQUISITION LLC** | | | |
| 1.1 | Non-Tax Priority Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 1.2 | City of New York Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 1.3 | UBS 33 Peck Allowed Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 1.4 | Other Secured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |

12

| Class | Claim or Interest | Impaired/Unimpaired | Entitlement To Vote |
|-------|-------------------|---------------------|---------------------|
| 1.5 | General Unsecured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 1.6 | Insured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 1.7 | Interests | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| **2.  36 WEST 38TH STREET LLC** | | | |
| 2.1 | Non-Tax Priority Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 2.2 | City of New York Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 2.3 | UBS 36 West Allowed Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 2.4 | Other Secured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 2.5 | General Unsecured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 2.6 | Insured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 2.7 | Interests | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| **3.  GEMINI 37 WEST 24TH STREET MT, LLC** | | | |

| Class | Claim or Interest | Impaired/Unimpaired | Entitlement To Vote |
|---|---|---|---|
| 3.1 | Non-Tax Priority Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 3.2 | City of New York Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 3.3 | Cornerstone 37 West Allowed Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 3.4 | Other Secured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 3.5 | General Unsecured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 3.6 | Insured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 3.7 | Interests | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| **4.  52 WEST 13TH P, LLC** | | | |
| 4.1 | Non-Tax Priority Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 4.2 | City of New York Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 4.3 | Cornerstone 52 West Allowed Secured Claim | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |

| Class | Claim or Interest | Impaired/Unimpaired | Entitlement To Vote |
|---|---|---|---|
| 4.4 | Other Secured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 4.5 | General Unsecured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 4.6 | Insured Claims | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |
| 4.7 | Interests | Unimpaired | Deemed to have accepted this Plan and not entitled to vote |

**3.2**    ***Treatment Of Classes Containing Claims Against Or Interests In 33 Peck.***

*Class 1.1 – Non-Tax Priority Claims Against 33 Peck*

   *Claims In Class:*  All Non-Tax Priority Claims against 33 Peck.

   *Treatment*:  Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on, or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the Allowed Amount of such Allowed Non-Tax Priority Claim.

   *Voting:*  Class 1.1 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject this Plan.

*Class 1.2 – City of New York Secured Claim*

> *Claims In Class:* The City of New York Secured Claim.

> *Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the Allowed Amount of the City of New York Secured Claim shall be paid in Cash, in full, including any amounts owed for statutory interest under applicable non-bankruptcy law.

> *Voting:* Class 1.2 is an Unimpaired Class, and the Holder of the City of New York Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the City of New York Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 1.3 – UBS 33 Peck Allowed Secured Claim*

> *Claims In Class:* The UBS 33 Peck Allowed Secured Claim.

> *Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the UBS Peck Allowed Secured Claim shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, pursuant to the terms of the 33 Peck Sale Agreement, including the assignment of the underlying loan and mortgage to the buyer (or its designee) of the 33 Peck Asset under the 33 Peck Sale Agreement.

> *Voting:* Class 1.2 is an Unimpaired Class, and the Holder of the UBS Peck Allowed Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the UBS Peck Allowed Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 1.4 – Other Secured Claims Against 33 Peck*

> *Claims In Class:* All Other Secured Claims against 33 Peck.

> *Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Other Secured Claim shall be entitled to the treatment set forth below.  The Debtors and the Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

Allowed Other Secured Claims shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, (c) the date on which such Other Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

*Voting:*  Class 1.4 is an Unimpaired Class, and the Holders of Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

*Class 1.5 – General Unsecured Claims Against 33 Peck*

*Claims In Class:*  All General Unsecured Claims against 33 Peck.

*Treatment*:  On the latest of (a) the Effective Date, (b) the date on which such General Unsecured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between the Debtors or Reorganized Debtors and the Holder of such General Unsecured Claim, or, in each case, as soon thereafter as practicable, each Holder of an Allowed General Unsecured Claim shall receive a Cash payment equal to the Allowed Amount of the Claim in full and final satisfaction of such Claim.

*Voting*:  Class 1.5 is an Unimpaired Class, and the Holders of General Unsecured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of General Unsecured Claims are not entitled to vote to accept or reject this Plan.

*Class 1.6 – Insured Claims Against 33 Peck*

*Claims In Class:*  All Insured Claims against 33 Peck.

*Treatment*:  On the Effective Date, all Insured Claims shall be Reinstated.

*Voting*:  Class 1.6 is an Unimpaired Class, and the Holders of Insured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the

17

Holders of Insured Claims are not entitled to vote to accept or reject this Plan.

*Class 1.7 –Interests In 33 Peck*

  *Claims In Class*: All Interests in 33 Peck, including the Interest of 33 Peck Slip Holding LLC.

  *Treatment:* On the Effective Date, all Interests shall be Reinstated by leaving unaltered the legal, equitable, and contractual rights to which the Interest entitles the Holder of the Interest.

  *Voting:* Class 1.7 is an Unimpaired Class, and the Holders of Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Interests are not entitled to vote to accept or reject this Plan.

**3.3**   ***Treatment Of Classes Containing Claims Against Or Interests In 36 West.***

*Class 2.1 – Non-Tax Priority Claims Against 36 West*

  *Claims In Class:* All Non-Tax Priority Claims against 36 West.

  *Treatment*: Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on, or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the Allowed Amount of such Allowed Non-Tax Priority Claim.

  *Voting:* Class 2.1 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject this Plan.

*Class 2.2 – City of New York Secured Claim*

*Claims In Class:* The City of New York Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the Allowed Amount of the City of New York Secured Claim shall be paid in Cash, in full, including any amounts owed for statutory interest under applicable non-bankruptcy law.

*Voting:* Class 2.2 is an Unimpaired Class, and the Holder of the City of New York Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the City of New York Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 2.3 – UBS 36 West Allowed Secured Claim Against 36 West*

*Claims In Class:* The UBS 36 West Allowed Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the UBS 36 West Allowed Secured Claim shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code pursuant to the terms of the 36 West Sale Agreement, including the assignment of the underlying loan and mortgage to the buyer (or its designee) of the 36 West Asset under the 36 West Sale Agreement.

*Voting:* Class 2.3 is an Unimpaired Class, and the Holder of the UBS 36 West Allowed Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the UBS 36 West Allowed Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 2.4 – Other Secured Claims Against 36 West*

*Claims In Class:* All Other Secured Claims against 36 West.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Other Secured Claim shall be entitled to the treatment set forth below. The Debtors and the Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

Allowed Other Secured Claims shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, (c) the date on which such Other Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

*Voting:*  Class 2.4 is an Unimpaired Class, and the Holders of Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

*Class 2.5 – General Unsecured Claims Against 36 West*

*Claims In Class:*  All General Unsecured Claims against 36 West.

*Treatment*:  On the latest of (a) the Effective Date, (b) the date on which such General Unsecured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between the Debtors or Reorganized Debtors and the Holder of such General Unsecured Claim, or, in each case, as soon thereafter as practicable, each Holder of an Allowed General Unsecured Claim shall receive a Cash payment equal to the Allowed Amount of the Claim in full and final satisfaction of such Claim.

*Voting*:  Class 2.5 is an Unimpaired Class, and the Holders of General Unsecured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

*Class 2.6 – Insured Claims Against 36 West*

*Claims In Class:*  All Insured Claims against 36 West.

*Treatment*:  On the Effective Date, all Insured Claims shall be Reinstated.

*Voting*:  Class 2.6 is an Unimpaired Class, and the Holders of Insured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Insured Claims are not entitled to vote to accept or reject this Plan.

*Class 2.7 –Interests In 36 West*

*Claims In Class*: All Interests in 36 West, including the Interest of 36 West 38th Street Holding, LLC.

*Treatment:*  On the Effective Date, all Interests shall be Reinstated by leaving unaltered the legal, equitable, and contractual rights to which the Interest entitles the Holder of the Interest.

*Voting:*  Class 2.7 is an Unimpaired Class, and the Holders of Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Interests are not entitled to vote to accept or reject this Plan.

**3.4     *Treatment Of Classes Containing Claims Against Or Interests In 37 West.***

*Class 3.1 – Non-Tax Priority Claims Against 37 West*

*Claims In Class:*  All Non-Tax Priority Claims against 37 West.

*Treatment*:  Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on, or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed Non-Tax Priority Claim, Cash equal to the Allowed Amount of such Allowed Non-Tax Priority Claim.

*Voting:*  Class 3.1 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the

Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject this Plan.

*Class 3.2 – City of New York Secured Claim*

*Claims In Class:*  The City of New York Secured Claim.

*Treatment:*  On the Effective Date, or as soon thereafter as is reasonably practicable, the Allowed Amount of the City of New York Secured Claim shall be paid in Cash, in full, including any amounts owed for statutory interest under applicable non-bankruptcy law.

*Voting:*  Class 3.2 is an Unimpaired Class, and the Holder of the City of New York Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the City of New York Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 3.3 – Cornerstone 37 West Allowed Secured Claim*

*Claims In Class:*  The Cornerstone 37 West Allowed Secured Claim.

*Treatment:*  On the Effective Date, or as soon thereafter as is reasonably practicable, the Cornerstone 37 West Allowed Secured Claim shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code pursuant to the terms of the 37 West Sale Agreement, including the assignment of the underlying loan and mortgage to the buyer (or its designee) of the 37 West Asset under the 37 West Sale Agreement.

*Voting:*  Class 3.3 is an Unimpaired Class, and the Holder of the Cornerstone 37 West Allowed Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holder of  the Cornerstone 37 West Allowed Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 3.4 – Other Secured Claims Against 37 West*

*Claims In Class:*  All Other Secured Claims against 37 West.

*Treatment:*  On the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Other Secured Claim shall be entitled to the treatment set forth below.  The Debtors and the

Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

Allowed Other Secured Claims shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, (c) the date on which such Other Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

*Voting:*  Class 3.4 is an Unimpaired Class, and the Holders of Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

*Class 3.5 – General Unsecured Claims Against 37 West*

*Claims In Class:*  All General Unsecured Claims against 37 West.

*Treatment*:  On the latest of (a) the Effective Date, (b) the date on which such General Unsecured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between the Debtors or Reorganized Debtors and the Holder of such General Unsecured Claim, or, in each case, as soon thereafter as practicable, each Holder of an Allowed General Unsecured Claim shall receive a Cash payment equal to the Allowed Amount of the Claim in full and final satisfaction of such Claim.

*Voting*:  Class 3.5 is an Unimpaired Class, and the Holders of General Unsecured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of General Unsecured Claims are not entitled to vote to accept or reject this Plan.

*Class 3.6 – Insured Claims Against 37 West*

> *Claims In Class:* All Insured Claims against 37 West.

> *Treatment*: On the Effective Date, all Insured Claims shall be Reinstated.

> *Voting:* Class 3.6 is an Unimpaired Class, and the Holders of Insured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Insured Claims are not entitled to vote to accept or reject this Plan.

*Class 3.7 –Interests In 37 West*

> *Claims In Class*: All Interests in 37 West, including the Interest of Gemini 37 West 24th Street, LLC.

> *Treatment:* On the Effective Date, all Interests shall be Reinstated by leaving unaltered the legal, equitable, and contractual rights to which the Interest entitles the Holder of the Interest.

> *Voting:* Class 3.7 is an Unimpaired Class, and the Holders of Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Interests are not entitled to vote to accept or reject this Plan.

**3.5**   **Treatment Of Classes Containing Claims Against Or Interests In 52 West.**

*Class 4.1 – Non-Tax Priority Claims Against 52 West*

> *Claims In Class:* All Non-Tax Priority Claims against 52 West.

> *Treatment*: Except to the extent that the Holder of an Allowed Non-Tax Priority Claim has agreed to a less favorable treatment of such Claim, on, or as soon as reasonably practicable after the latest of (a) the Effective Date, (b) the date on which such Non-Tax Priority Claim becomes an Allowed Non-Tax Priority Claim, (c) the date on which such Allowed Non-Tax Priority Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between the Debtors and the Holder of such Non-Tax Priority Claim, each Holder of an Allowed Non-Tax Priority Claim shall receive, in full and final satisfaction, release, and discharge of, and in exchange for, such Allowed

24

Non-Tax Priority Claim, Cash equal to the Allowed Amount of such Allowed Non-Tax Priority Claim.

*Voting:* Class 4.1 is an Unimpaired Class, and the Holders of Non-Tax Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Non-Tax Priority Claims are not entitled to vote to accept or reject this Plan.

*Class 4.2 – City of New York Secured Claim*

*Claims In Class:* The City of New York Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the Allowed Amount of the City of New York Secured Claim shall be paid in Cash, in full, including any amounts owed for statutory interest under applicable non-bankruptcy law.

*Voting:* Class 4.2 is an Unimpaired Class, and the Holder of the City of New York Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the City of New York Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 4.3 – Cornerstone 52 West Allowed Secured Claim*

*Claims In Class:* The Cornerstone 52 West Allowed Secured Claim.

*Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, the Cornerstone 52 West Allowed Secured Claim shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code pursuant to the terms of the 52 West Sale Agreement, including the assignment of the underlying loan and mortgage to the buyer (or its designee) of the 52 West Asset under the 52 West Sale Agreement.

*Voting:* Class 4.3 is an Unimpaired Class, and the Holder of the Cornerstone 52 West Allowed Secured Claim is conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Cornerstone 52 West Allowed Secured Claim is not entitled to vote to accept or reject this Plan.

*Class 4.4 – Other Secured Claims Against 52 West*

        *Claims In Class:* All Other Secured Claims against 52 West.

        *Treatment:* On the Effective Date, or as soon thereafter as is reasonably practicable, each Holder of an Allowed Other Secured Claim shall be entitled to the treatment set forth below. The Debtors and the Reorganized Debtors specifically reserve the right to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims.

        Allowed Other Secured Claims shall be paid in Cash, in full, including any amounts owed under section 506 of the Bankruptcy Code, on, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, (c) the date on which such Other Secured Claim is otherwise due and payable, and (d) such other date as mutually may be agreed to by and between such Holder and the Debtors or Reorganized Debtors.

        *Voting:* Class 4.4 is an Unimpaired Class, and the Holders of Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Secured Claims are not entitled to vote to accept or reject this Plan.

*Class 4.5 – General Unsecured Claims Against 52 West*

        *Claims In Class:* All General Unsecured Claims against 52 West.

        *Treatment*: On the latest of (a) the Effective Date, (b) the date on which such General Unsecured Claim becomes Allowed, and (c) such other date as mutually may be agreed to by and between the Debtors or Reorganized Debtors and the Holder of such General Unsecured Claim, or, in each case, as soon thereafter as practicable, each Holder of an Allowed General Unsecured Claim shall receive a Cash payment equal to the Allowed Amount of the Claim in full and final satisfaction of such Claim.

        *Voting*: Class 4.5 is an Unimpaired Class, and the Holders of General Unsecured Claims are conclusively deemed to have accepted this

Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of General Unsecured Claims are not entitled to vote to accept or reject this Plan.

*Class 4.6 – Insured Claims Against 52 West*

*Claims In Class:*  All Insured Claims against 52 West.

*Treatment*:  On the Effective Date, all Insured Claims shall be Reinstated.

*Voting*:  Class 4.6 is an Unimpaired Class, and the Holders of Insured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Insured Claims are not entitled to vote to accept or reject this Plan.

*Class 4.7 –Interests In 52 West*

*Claims In Class*: All Interests in 52 West, including the Interest of 52 West 13th Street Holding, LLC.

*Treatment:*  On the Effective Date, all Interests shall be Reinstated by leaving unaltered the legal, equitable, and contractual rights to which the Interest entitles the Holder of the Interest.

*Voting:*  Class 4.7 is an Unimpaired Class, and the Holders of Interests are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Interests are not entitled to vote to accept or reject this Plan.

**3.6**   ***Intercompany Claims.***  On the Effective Date, all net Intercompany Claims (taking into account any setoffs of Intercompany Claims) held by the Debtors between and among the Debtors or between one or more Debtors and any affiliate of one of the Debtors that is not itself a Debtor shall, at the election of Reorganized Debtors, be either (a) Reinstated, (b) released, waived, and discharged, or (c) contributed to, or dividend to, the capital of the obligor.

**3.7**   ***Special Provision Regarding Unimpaired Classes of Claims.***  Except as otherwise provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims in Unimpaired Classes, including all rights with respect to legal and equitable defenses to setoffs against or recoupments of Claims in Unimpaired Classes.

## ARTICLE 4

## <u>ACCEPTANCE OF THIS PLAN</u>

**4.1** *Classes Entitled to Vote.* There are no Classes under the Plan that are Impaired and entitled to vote to accept or reject this Plan. By operation of law, Classes 1.1, 1.2, 1.3, 1.4, 1.5, 1.6, 1.7, 2.1, 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, and 4.7, which are Unimpaired Classes, are deemed to have accepted this Plan and, therefore, are not entitled to vote.

**4.2** *Acceptance by Impaired Classes.* An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code, (i) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan and (ii) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

**4.3** *Elimination of Classes.* To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.4** *Cramdown.* To the extent necessary, the Debtors shall request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

## ARTICLE 5

## <u>MEANS FOR IMPLEMENTATION OF THIS PLAN</u>

**5.1** *Continued Legal Existence and Revesting of Assets.* Except as otherwise provided in this Plan, each of the Debtors will continue to exist after the Effective Date as a separate legal entity, with all the powers of such an entity (whether a limited liability company, corporation, or other entity, as appropriate) under applicable law in the jurisdiction in which each applicable Debtor is organized, incorporated or otherwise formed and pursuant to such Debtor's articles of organization or formation, operating agreement and other organizational documents in effect as of the Effective Date (provided that such organizational documents shall be amended to prohibit the Reorganized Debtor from issuing non-voting equity securities, to the extent necessary to comply with section 1123(a) of the Bankruptcy Code), without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. In accordance with Article 9.2 hereof, and except as otherwise

explicitly provided in this Plan, on the Effective Date, all property comprising each Estate (including Retained Actions) shall revest in the applicable Reorganized Debtor.

**5.2**     *Sources of Cash for Distribution.*  All Cash necessary for the Reorganized Debtors to make payments required by this Plan shall be obtained from (i) existing Cash balances, (ii) the operations of the Debtors or Reorganized Debtors, and (iii) the sale of assets by the Debtors as described in Article 5.3 herein.

**5.3**     *Sales of Real Estate Assets.*  Pursuant to section 363(b) and (f) of the Bankruptcy Code, the Debtors have filed the Real Estate Sale Motions for approval the sale of the Real Estate Assets free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests pursuant to the terms of the Real Estate Sale Agreements.  If a Real Estate Sale Agreement has not been approved and consummated on or before the Confirmation Date, then pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the Debtors shall consummate the sale of the applicable Real Estate Asset free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests pursuant to the terms of the applicable Real Estate Sale Agreement on or before the Effective Date.  Confirmation of the Plan shall constitute approval of all terms of the Real Estate Sale Agreements. Following the conclusion of an auction of a Real Estate Asset conducted pursuant to the terms and conditions of a Real Estate Sale Motion, the Debtors shall file with the Bankruptcy Court and serve on all interested parties a notice of the results of the auction, the intended payment of any applicable real estate broker fees, and the expected closing date, which shall be not less than seven business days after service of the notice.  If any interested party believes that the auction was not conducted in accordance with the terms and conditions of the Real Estate Sale Motion or that the intended payment of real estate broker fees is not appropriate, such interested party may seek appropriate relief from the Bankruptcy Court.  Following the consummation of a sale of a Real Estate Asset, the Debtors shall file with the Bankruptcy Court and serve on all interested parties a closing reconciliation that includes an itemization of all payments from the proceeds of the sale, including payments to secured creditors.

**5.4**     *Corporate Action*.  Each of the matters provided for under this Plan involving the corporate structure of any Debtor or Reorganized Debtor or any corporate action to be taken by, or required of, any Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors.

**5.5**     *Preservation of Causes of Action.*  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions.  After the Effective Date, the Reorganized Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The Reorganized

Debtors or any successors, in the exercise of their sole discretion, may pursue such Retained Actions.  The failure of the Debtors to specifically list any claim, right of action, suit, proceeding, or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtors or the Reorganized Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits, proceedings, and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such claim, right of action, suit, proceeding, or other Retained Action upon or after the confirmation or consummation of this Plan.

**5.6**     *Effectuating Documents; Further Transactions*.  Each of the Debtors and Reorganized Debtors, and their respective officers and designees, is authorized to execute, deliver, file, or record all contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law.

**5.7**     *Exemption From Certain Transfer Taxes and Recording Fees*.  All transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan will not be subject to any stamp tax or similar tax, including any tax imposed pursuant to NY CLS Tax § 1402 or NYC Administrative Code 11-2102, in accordance with section 1146(a) of the Bankruptcy Code. Nothing herein shall be construed to exempt from tax any transfer that is not exempt from tax pursuant to section 1146(a) of the Bankruptcy Code, including any transfer by a non-Debtor or any tax which is not a stamp tax or similar tax.  The Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax.

**5.8**     *Further Authorization.*  The Reorganized Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

**5.9**     *Officers and Directors of Reorganized Debtors.*  On the Effective Date, each of the Reorganized Debtors will continue to be managed by its sole member in accordance with its applicable operating agreement.  Dante A. Massaro will continue to serve as President and Christopher F. La Mack will continue to serve as Vice President for each Reorganized Debtor.  On the Effective Date, such member will be appointed automatically without any requirement of further action by stockholders, members, creditors, directors, or managers of the Debtors or the Reorganized Debtors, and its compensation for such services shall be in whole or in part as agreed to in the applicable operating agreement.

**5.10**   *Non-Impairment of Derivative Rights*.  Nothing in this Plan shall modify, compromise or impair William T. Obeid's rights, standing or authority with respect to the Derivative Claims, including any right, standing or authority that Obeid had, has or may in the future have to prosecute the Derivative Claims.

## ARTICLE 6

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1**   *Allowed Claims and Interests.*  Notwithstanding any provision herein to the contrary, the Debtors or the Reorganized Debtors shall make distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive only a distribution on account thereof when and to the extent that such Holder's Disputed Claim becomes an Allowed Claim.

**6.2**   *Distributions for Claims Allowed as of the Effective Date.*  Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable.  Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable.  Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions to Holders of Allowed Claims will be made by mail as follows:

> (a)    If the Holder filed a proof of claim, distributions will be sent to the address, if any, set forth on the proof of claim;

> (b)    If the Holder, after filing a proof of claim, delivered or delivers to the Debtors a written notice of address change, distributions will be sent to the address set forth in the written notice and not the address set forth on the proof of claim;

> (c)    If no proof of claim was filed or if the filed proof of claim does not set forth a legible and complete address and if the Debtors have not received a written notice of address change, distributions will be sent to the address set forth in the Debtors' schedules of assets and liabilities (the "Schedules") or

> (d)    If no proof of claim was filed or if the proof of claim does not set forth a legible, complete address; the Debtors have not received a written notice of address change; and the Schedules do not set forth a complete address, then the distribution will be deemed to be an "Undeliverable Distribution" as defined below.

**6.3     *Undeliverable Distributions.*** If a distribution is made and returned to the Reorganized Debtors marked as undeliverable for any reason, the distribution shall be deemed an "Undeliverable Distribution." If a distribution to a Holder is returned to the Reorganized Debtors as an Undeliverable Distribution or is deemed to be an Undeliverable Distribution, the Reorganized Debtors shall make no further distribution to the Holder  unless and until the Reorganized Debtors are timely notified by such Holder, in writing, of the Holder's current address. Any Holder who is otherwise entitled to an Undeliverable Distribution and who does not, within 60 days after the attempted delivery thereof (the "***60-Day Period***"), provide the Reorganized Debtors with written notice asserting its claim in that Undeliverable Distribution and setting forth a current, deliverable address, will be deemed to waive any claim to or interest in that Undeliverable Distribution and will be forever barred from receiving that Undeliverable Distribution from the Reorganized Debtors. Any Undeliverable Distributions that are not claimed prior to the expiration of the 60-Day Period shall revert back to the Reorganized Debtors free and clear of all claims of the Holder and all other Holders of Allowed Claims. The Reorganized Debtors shall not have any obligation to attempt to locate any Holder whose distribution is undeliverable.

**6.4     INTENTIONALLY DELETED**.

**6.5     *Means of Cash Payment.*** Payments of Cash made pursuant to this Plan shall be made, at the option and in the sole discretion of the applicable Reorganized Debtor, by checks drawn on, or wire transfer from, a domestic bank selected by the Reorganized Debtor. Cash payments to foreign creditors may be made, at the option of the applicable Reorganized Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**6.6     *Withholding and Reporting Requirements.*** In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**6.7     *Setoffs.*** The Reorganized Debtors may, pursuant to applicable law, but shall not be required to, set off against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder. The Debtors or the Reorganized Debtors shall provide notice of any proposed setoff to the Holder of such Claim at least five (5) days prior to effectuating such setoff.

**6.8**     *Procedures for Resolving Disputed, Contingent, and Unliquidated Claims.*

(a)     *Authority and Deadline.*  The Reorganized Debtors shall have the sole right to file objections to all Disputed Claims.  Any objections to Disputed Claims shall be served and filed in the Bankruptcy Court on or before sixty (60) days after the Effective Date; provided, however, with respect to any Unimpaired Claim, in the event such Claim is not an Allowed Claim as of the Effective Date, the Holder of such Claim or the Reorganized Debtors may commence at any time an action or proceeding to determine the amount and validity of such Claim in the Bankruptcy Court or any venue in which such Claim could have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.

(b)     *Creation of Reserves for Disputed Claim.*  The Reorganized Debtors shall (i) establish and maintain a reserve for Disputed Claims, (ii) establish and maintain a reserve for unclaimed distributions, and (iii) establish any other reserves or accounts it deems necessary or appropriate.  All cash held in the reserves shall be invested only in investments permitted under the Bankruptcy Code and maintained in accounts held at authorized bank depositories for the Southern District of New York.

(c)     *Estimation of Claims.*  The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection and make distributions under the Plan with respect to other Allowed Claims in the same class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Except as provided herein and in the Agreement, Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(d)     *Distributions Relating to Disputed Claims.*  At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall distribute to the Holder of such Claim such Cash as the Holder is entitled to under the Plan, which distribution shall occur as soon as practicable after the date that the order or judgment allowing any Disputed Claim becomes a Final Order.  To the extent

that all or a portion of a Disputed Claim is Disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is Disallowed.

(e)     *Disallowed Claims*.  All Claims held by persons or entities against whom or which any of the Debtors or Reorganized Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and shall continue to be Disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Reorganized Debtors from such party have been paid.

## ARTICLE 7

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1**     *Assumption/Rejection of Executory Contracts and Unexpired Lease*s. Each Executory Contract and Unexpired Lease shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date unless, on or prior to the Effective Date, the Debtors serve notice of intent to assume and assign such Executory Contract or Unexpired Lease (a "***Notice of Assumption and Assignment***").

An Executory Contract or Unexpired Lease that is deemed to be rejected pursuant to the foregoing sentence shall be referred to as a "***Rejected Contract*.**"  An Executory Contract that is assumed or subject to a Notice of Assumption and Assignment as described above shall be referred to as an "***Assumed Contract*.**"

The Notice of Assumption and Assignment shall provide for the cure of any defaults and satisfaction of other preconditions to assumption and assignment consistent with the requirements of section 365(b)(1) of the Bankruptcy Code.  No provision of any agreement or other document that permits a person to terminate or modify an agreement or to otherwise modify the rights of the Debtors based on the filing of the Chapter 11 Cases or the financial condition of the Debtors shall be enforceable.  All cure payments under any Assumed Contract will be made on the Effective Date or as soon as practicable thereafter.  If the cure payment is required by a Real Estate Sale Agreement, the cure payment will be made in accordance with the Real Estate Sale Agreement.

If the non-Debtor party to the Executory Contract or Unexpired Lease objects to the assumption and assignment or cure amount, the non-Debtor party must file an objection with the Bankruptcy Court within 14 days of the service of the Notice of Assumption and Assignment.  In the event of a dispute concerning the assumption, Article 6.8 herein and an applicable Real Estate Sale Agreement shall govern and cure

payments required by section 365(b)(1) of the Bankruptcy Code shall be paid upon entry of a Final Order resolving such dispute or otherwise consistent with the applicable Real Estate Sale Agreement.

Unless otherwise provided by an order of the Bankruptcy Court, any Claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed by Holders of such Claims with the Bankruptcy Court and served on the parties entitled to notice under this Plan no later than thirty (30) days after the earlier of (1) the Effective Date and (2) the effective date of such rejection, subject to the Debtors' and Reorganized Debtors' right to object thereto.  In the event of such objection, the Debtors shall not be obligated to make any distribution in respect of such Claim until such dispute is resolved by Final Order of the Bankruptcy Court or the agreement of the parties.

Notwithstanding anything to the contrary in the Plan, including this Article 7.1, the Debtors may reject a collective bargaining agreement only in compliance with the requirements of section 1113 of the Bankruptcy Code.

**7.2** *Compensation and Benefit Programs.*  Except as otherwise set forth in a Real Estate Sale Agreement, all of the Debtors' existing programs, plans, agreements, and arrangements relating to employee compensation and benefits (other than as set forth in any Rejected Contract), including all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, and life, accidental death and dismemberment insurance plans, entered into before the Petition Date, as amended from time to time and to the extent and as in effect immediately prior to the Effective Date ("Benefit Plans") will be deemed to be, and will be treated as though they are, executory contracts that are rejected under Article 7.1 of this Plan, and the Debtors' and Reorganized Debtors' obligations and rights under such programs, plans, agreements, and arrangements will terminate upon confirmation of this Plan.

**7.3** *Employment Contracts.*  Except as otherwise set forth in a Real Estate Sale Agreement, all employment agreements shall be deemed rejected as of the Effective Date.  Any Claims arising from the rejection of any employment agreements shall be governed by the deadlines set forth in Article 7.1.  Any such Claims will be classified as General Unsecured Claims and will be capped in accordance with section 502(b)(7) of the Bankruptcy Code.

## ARTICLE 8

## CONFIRMATION AND CONSUMMATION OF THIS PLAN

**8.1** *Condition To Entry of the Confirmation Order.* The following are conditions precedent to the Confirmation, each of which must be satisfied, or waived in writing, by the Debtors in accordance with the terms hereof:

(a) The Plan and all schedules, documents, supplements and exhibits relating to this Plan shall have been filed in form and substance acceptable to the Debtors.

(b) The proposed Confirmation Order shall be in form and substance acceptable to the Debtors.

**8.2** *Conditions To Effective Date.* The Debtors shall request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry. The following are conditions precedent to the occurrence of the Effective Date for each Debtor, each of which must be satisfied or waived by the applicable Debtor in accordance with the terms hereof:

(a) The Confirmation Order, in form and substance satisfactory to the Debtor, shall be in full force and effect and not subject to any stay and shall, among other things, provide that the Debtor and Reorganized Debtor are authorized without further member approval or consent to take all actions necessary to enter into all agreements or documents created in connection with this Plan. For avoidance of doubt, the Confirmation Order need not be a Final Order as defined in the Plan. Without limiting the foregoing, the chairman of the board of directors, president, chief executive officer, chief financial officer or any other appropriate officer of the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

(b) All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of this Plan shall have been obtained.

(c) All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

(d) The Debtor shall have sufficient Cash to make all required payments to be made by the Debtor on the Effective Date.

The Effective Date with respect to a Debtor shall be deemed to have occurred on the date that the Debtor files with the Bankruptcy Court and serves on interested parties

a notice of Effective Date with respect to such Debtor *provided, however*, the Effective Date with respect to a Debtor shall occur no later than February 29, 2016, subject to the right of a Debtor to request a modification of the deadline for cause shown.  The failure of an Effective Date to occur for one Debtor shall not void, preclude or otherwise affect the occurrence of an Effective Date for another Debtor.

**8.3    *Waiver Of Condition.***  The Debtors may jointly waive, in whole or in part, the conditions to the occurrence of the Effective Date, without any notice to parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date shall preclude the occurrence of the Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Debtors.  The waiver of a condition to the occurrence of the Effective Date shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE 9

## EFFECT OF PLAN CONFIRMATION

**9.1    *Binding Effect.***  This Plan shall be binding upon and inure to the benefit of the Debtors, their Estates, all current and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors.

**9.2    *Revesting of Assets.***  Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions) shall revest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security holders except as otherwise set forth in the Plan.  As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**9.3    *Injunction.*  Except as provided in this Plan or the Confirmation Order, from and after the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, or liability, that is satisfied in full under this Plan, along with their respective current and former employees, agents, officers, directors, managers, principals, affiliates, shareholders, and members, are permanently enjoined from taking any of the following actions against the Debtors, the Reorganized Debtors and the Exculpated Parties, and their respective agents, officers, directors, managers, employees, representatives, advisors, attorneys, affiliates, shareholders, or members, or any of their successors or assigns or any of their respective property on account of any such satisfied Claim, obligation, suit,**

judgment, damage, demand, debt, right, cause of action, liability or Interest:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order.

> **9.4**   *Exculpation and Limitation of Liability.*
>
> (a)   **INTENTIONALLY DELETED.**
>
> (b)   **INTENTIONALLY DELETED.**
>
> (c)   **Notwithstanding any other provision herein, nothing in this Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Exculpated Parties, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Exculpated Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority, against the Exculpated Parties referred to herein.**
>
> (d)   **Notwithstanding any other provision herein, nothing in this Plan shall limit the liability of the Professionals of the Debtors or the Reorganized Debtors to their respective clients, including pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.**

**9.5**   *Term of Bankruptcy Injunction or Stays.*  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**9.6**   *Post-Effective Date Retention of Professionals.*  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such

date will terminate and the Reorganized Debtors may employ and pay professionals in the ordinary course of business.

**9.7**    *Effect of Release, Discharge and Injunction on Unimpaired Claims.* Nothing in this Plan, including the injunction and exculpatory provisions set forth in this Article IX, shall prevent any Holder of an Unimpaired Claim from pursuing (i) the Allowance of such Unimpaired Claim, or (ii) payment of such Unimpaired Claim from the Reorganized Debtors.

## ARTICLE 10

## RETENTION OF JURISDICTION

**10.1**    *Retention of Jurisdiction.*    Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease with respect to which any Debtor or Reorganized Debtor may be liable, and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving the Debtors that may be pending on the Effective Date;

(c)    decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications, involving objections to Claims filed after the Effective Date;

(d)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Confirmation Order;

(e)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from, or obligations incurred in connection with, this Plan or such documents;

(f)    modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, the Confirmation Order, or any contract,

instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency, in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(g)     hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b) and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date the payment of fees and expenses of the Reorganized Debtors, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(i)     adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

(j)     recover all assets of the Debtors and property of the Estates, wherever located;

(k)     hear and determine causes of action by or on behalf of the Debtors or the Reorganized Debtors;

(l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason, or in any respect, modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(m)     hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     determine any other matters that may arise in connection with, or relate to, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order (other than a dispute arising after the Effective Date under, or directly with respect to, the Transaction Documents, which such disputes shall be adjudicated in accordance with the terms of the Transaction Documents);

(o)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(p)     hear and determine such other matters related hereto that are not inconsistent with the Bankruptcy Code or title 28 of the United States Code; and

(q)     enter an order closing the Chapter 11 Cases.

**10.2     *Failure of Bankruptcy Court to Exercise Jurisdiction.*** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set for in Article 10.1 of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1     *Effectuating Documents and Further Transactions.*** Each of the Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan.

**11.2     *Corporate Action.*** Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, members or directors of one or more of the Debtors or the Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation or other applicable law of the states in which the Debtors or the Reorganized Debtors are organized without any requirement of further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

**11.3     *Indemnification Of Officers, Directors And Employees*.** All Claims arising on or after the Commencement Date relating to or arising from the obligation of a Debtor to exculpate, indemnify or advance any expense to any officer, director, manager, employee or agent, shall survive confirmation of the Plan and become the obligations of the Reorganized Debtor.

**11.4     *Payment Of Statutory Fees.*** All U.S. Trustee Fees due and payable as of the Effective Date, plus applicable interest, if any, shall be paid by the Debtors in full on the Effective Date.  The Reorganized Debtors shall be responsible for timely payment of all U.S. Trustee Fees, plus applicable interest, if any, incurred after the Effective Date.

**11.5     *Post-Confirmation Status Report*.** Subject to section 1106(a)(7) of the Bankruptcy Code, the Reorganized Debtors shall file, within 45 days after the date of the Confirmation Date, a status report detailing the actions taken by the Debtors and the Reorganized Debtors and the progress made toward the consummation of this Plan.

41

Reports shall be filed thereafter every January 15, April 15, July 15, and October 15 until a final decree has been entered or until conversion or dismissal, whichever is earlier.

      **11.6**    *Amendment Or Modification Of This Plan.*  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors reserve the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, including, without limitation the right to withdraw the Plan as to any particular Debtor and seek to confirm and consummate the Plan with respect to the other Debtors; *provided, however*, that, in the event a material modification to the Plan is proposed after the Effective Date, the Reorganized Debtors shall provide notice and an opportunity to object to all interested parties.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

      **11.7**    *Severability of Plan Provisions.*  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, upon the request of the Debtors, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

      **11.8**    *Successors and Assigns*.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including the Reorganized Debtors.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

      **11.9**    *Revocation, Withdrawal, or Non-Consummation.*  The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization.  If the Debtors revoke or withdraw this Plan, or if Confirmation or consummation of this Plan does not occur, then (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Class of Claims or any release contemplated hereby), assumption of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (A) constitute or be deemed to

constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (B) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (C) constitute an admission of any sort by the Debtors or any other Person.

     **11.10**  *Notice.*  All notices, requests, and demands to or upon the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by either hardcopy or electronic mail, addressed as follows:

> If to the Reorganized Debtors, to:
>
> Gemini Real Estate Advisors, LLC
> 16740 Birkdale Commons Pkwy Ste 306
> Huntersvilles, NC 28078
> Attn: Dante A. Massaro
> Email: dmassaro@gemini-re.com
> Telephone:  (704) 895-7845 x101
>
> with a copy to:
>
> Robins Kaplan LLP
> Attn:  David B. Shemano, Esq.
> 2049 Century Park East, Suite 3400
> Los Angeles, California 90067
> Email: dshemano@robinskaplan.com
> Telephone: (310) 552-0130

     **11.11**  *Governing Law.*  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law of such jurisdiction.

     **11.12**  *Tax Reporting and Compliance.*  The Reorganized Debtors are hereby authorized, on behalf of each of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

Dated:  December 2, 2015

**36 WEST 38TH STREET LLC,**
**a Delaware limited liability company**

By:   36 West 38th Street Holding LLC,
       a Delaware limited liability company
       its Sole Member

     By:   36 West 38th Street Manager, LLC
          a Delaware limited liability company
          its Manager

         By:   Gemini Equity Partners, LLC
             a Delaware limited liability company
             its Sole Member

             By: _____
             Name:    Christopher F. La Mack
             Title:    Member

             By: _____
             Name:    Dante A. Massaro
             Title:    Member

**GEMINI 37 WEST 24TH STREET MT, LLC,**
**a Delaware limited liability company**

     By:   Gemini NYC Hotel LLC,
          a Delaware limited liability company
          its Sole Member

         By:   Gemini Real Estate Advisors, LLC,
              a Delaware limited liability company
              its Manager and Member

             By: _____
             Name:    Christopher F. La Mack
             Title:    Member

             By: _____
             Name:    Dante A. Massaro
             Title:    Member

44

**33 PECK SLIP ACQUISITION LLC,**
**a Delaware limited liability company**

By:   33 Peck Slip Holding LLC,
      a Delaware limited liability company
      its Sole Member

      By:   33 Peck Slip Manager LLC,
            a Delaware limited liability company
            its Manager

            By:   Gemini Equity Partners LLC,
                  a Delaware limited liability company
                  its Sole Member

            By: _____
            Name:    Christopher F. La Mack
            Title:     Member

            By: _____
            Name:    Dante A. Massaro
            Title:     Member

**52 WEST 13TH P, LLC,**
**a Delaware Limited Liability Company**

By:   52 West 13th Street Holding LLC,
      a Delaware Limited Liability Company
      its Sole Member

      By:   Gemini NY Hospitality Fund LLC,
            a Delaware Limited Liability Company
            its Manager and Member

            By:   Gemini Real Estate Advisors, LLC,
                  a Delaware limited liability company
                  its Manager

            By: _____
            Name:    Christopher F. La Mack
            Title:     Member

            By: _____
            Name:    Dante A. Massaro
            Title:     Member

45